82,778-01

TARRANT COUNTY TEXAS 11.07 WRIT NO. C-396-010272-1152016-A
**COURT OF CRIMINAL APPEALS WRIT #**_____

(unknown at this time
to Applicant)

EX PARTE                    §

§

§    IN THE TEXAS COURT OF CRIMINAL
§    APPEALS, AUSTIN, TX
§

DESMOND LEDET              §

RECEIVED IN
COURT OF CRIMINAL APPEALS
FEB 05 2015
Abel Acosta, Clerk

**OBJECTION #1; OBJECTION TO THE HABEAS TRIAL COURT'S ADOPTION OF INACCURATE, INCOMPLETE, AND INCORRECT FINDINGS OF FACT AND LEGAL CONCLUSIONS PROPOSED BY THE STATE REGARDING THE DENIAL OF APPLICANT'S FUNDAMENTAL RIGHT TO A PUBLIC TRIAL(Grounds 1,3 &4) AND HIS GROUND OF INEFFECTIVE ASSISTANCE OF COUNSEL BASED ON DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE DENIAL OF THE PUBLIC TRIAL RIGHT( Ground #2)**

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

I,Desmond Ledet, the Applicant pro-se, in said writ of habeas corpus, humbly and respectfully presents this honorable Court with the following **O B J E C T I O N** as stated above in the heading. I will refer to myself as the "Applicant". Today is **Feb.3** . 2015. On Jan.28, 2015 the Applicant received from Prison Mailroom staff a letter notifying him that the trial court adopted the State's **inaccurate, incomplete, and incorrect** findings of fact and conclusions of law. Please consider this objection timely as it is being placed in prison mailbox **"6"** days after Applicant became aware of the habeas judges adoption, and notified that the ORDER from that judge ordered the entire writ transcript forwarded to this Court on Jan. 22, 2015. The Post Conviction writ Clerk in Tarrant County ("Cindy") informed the Applicant's mother over the phone that on the 23rd of January the entire writ/writ transcript, etc. was forwarded to your Court. The Applicant has not yet received notice from your Court———— giving the writ number(assigned by this

p.I of IX        (A 42 PAGE EXHIBIT IS NOW ATTACHED)

Court of Criminal Appeals).   Since the Applicant has been inform-
the writ was sent to this Court along with the trial court's er-
roneous adoption of the State's proposed findings and legal con-
clusions, this accurate OBJECTION is now presented to your Court:

A: THE TRIAL COURT'S FACT FINDINGS DO NOT ACCURATELY REFLECT THE EVIDENCE DEVELOPED IN THE HABEAS CORPUS RECORD THAT PROVES BY THE **PREPONDERANCE OF THE EVIDENCE THE APPLICANT IS ENTITLED TO RELIEF**.. Ex parte Reed, 271 S.W. 3d 698, 729 (Tex.Crim.App.2008).

B: THE COURT'S FACT FINDINGS ARE **INCOMPLETE** AND DO NOT FULLY **CONCEDE** ALL OF THE EVIDENCE DEVELOPED IN THE HABEAS RECORD, NOR IN THE REPORTER'S RECORD, THAT ESTABLISH BASED UPON THE PREPONDERANCE OF THE EVIDENCE THE APPLICANT IS ENTITLED TO HABEAS CORPUS RELIEF.

C: THE COURT'S FACT FINDINGS **EXCLUDE MULTIPLE ESTABLISHED FA- CTS** RELEVANT TO THIS HONORABLE COURT'S RESOLUTION OF GROU- NDS #1-4 THAT ESTABLISH BY THE PREPONDERANCE OF THE EVI- DENCE THE APPLICANT IS ENTITLED TO HABEAS CORPUS RELIEF.

D: THE APPLICANT HAS ALLEGED SEVERAL MATTERS IN THE APPLICA- TION NOT ADMITTED BY THE STATE IN THEIR FACT FINDINGS A- DOPTED BY THE TRIAL COURT AND SUBMITTED TO THIS COURT. BE- CAUSE THOSE MATTERS ARE DEEMED DENIED(Tex.Code Crim. Proc. Art.11.07 §3(b)) **THE APPLICANT FURTHER OBJECTS TO THOSE DEEMED DENIALS AS BEING INCORRECT AND HERE AND NOW REASSE- RTS EACH AND EVERY FACTUAL MATTER ASSERTED IN THE APPLICA- TION AS BEING CORRECT** AND ESTABLISHING BY THE PREPONDERANCE OF THE EVIDENCE THE APPLICANT IS ENTITLED TO RELIEF. THOSE MATTERS INCLUDE, BUT ARE NOT LIMITED TO:

1) The visiting sit in judge at trial(Phillip Vick) failed to take **every reasonable measure to accomodate public attendance during the voir dire proceedings of Appli- cant's trial.** Instead all at one time he summoned at- least 52, possibly 15 more, prospective jurors all into the courtroom's public seating area at one time, leaving **no room in the gallery for Applicant's parent's** who had to **wait in the hall.** See Application, p.6-7; Memorandum p.3-15; [v.3 RR p.5 lines 24-p.6 line 7].

2) The 396th Judicial District Court of Tarrant County at the time of Applicant's trial and presently seats ap- proxiamately 45 people in the public seating area. See Application, p.7; Memorandum p.6.

3) The Applicant was never informed of his right to a pub- lic trial by the Honorable judge presiding at trial, nor by his defense attorney(Hon. Fortinberry), nor by the

State, and did not knowingly, or intentionally relinquish or abandon, his right to a public trial, and to due process, as guaranteed him by the sixth and fourteenth amendment of the U.S. Constitution. See Application, p.6-9; Memorandum, p.18; Memorandum, Exhibit C: Applicant's Unsworn Declaration-Statement.

4) The trial Court did not consider reasonable alternatives to closing the proceedings. See Application, p.6-9[v.3 RR p.5 lines 24-p.6 line 7]; Memorandum, p.14-16

5) The jury box was left empty during voir dire and could have been used to accomodate Applicant's parents,or to place enough prospective juror's there to allow some room in the public seating area for Applicant's two parents to be able to observe voir dire. See Application p.7; Memorandum, p.10-11; [v.3 RR p.14 lines 12-14]

6) The trial judge presiding made no findings of some overriding interest likely to be prejudiced by allowing Mr. and Mrs. Ledet(Applicant's parents) or any member of the public into the voir dire proceedings. See Application p.9; Memorandum p.16.

7) **The Second District Court of Appeals has already reversed atleast one conviction in which the same exact judge (Hon. George Gallegher) who adopted the finding the Applicant is now objecting to denied the defendant his right to a public trial during voir dire in the exact manner the Applicant was denied a public voir dire, in the exact same courtroom.** See Memorandum, p.26-27; Turner v. State, 413 S.W. 3d 442, 447(Tex.App.Fort Worth 2012, no pet.).

------------

E: THE TRIAL COURT'S LEGAL CONCLUSIONS ARE INCORRECT AND CONFLICT HEAVILY WITH WELL ESTABLISHED OPINIONS FROM THIS COURT AND THE UNITED STATES SUPREME COURT. THE IMPROPER LEGAL CONCLUSIONS INCLUDE, BUT ARE NOT LIMITED TO:

1) The adopted legal conclusions fail entirely to acknowledge that the deprivation of a public trial is a fundamental error according to this Court's precedent. Clark v. State, 365 S.W. 3d 333, 340(Tex.Crim.App.2012) ; & Neder v. United States, 527 U.S. 1, 7(1999). (Issue raised in Applicant's Ground #4). See "State's Proposed ...Findings...Conclusions of Law", p.13, ¶4; p.14, ¶7

a) Respectfully asserted, this Court should file and set this case for submission, using Applicant's Ground #4 to settle once and for all any residual ambiguity in the jurisprudence of this State concerning the funda-

mental nature of the right to a public trial. See Clark v. State, 365 S.W. 3d at 340("fundamental error occurs when certain constitutional rights are violated, such as... the right to a public trial") (citations omitted).

2) The adopted legal conclusions entirely fail to acknowledge that Applicant's Public trial Grounds are not simply Grounds that he was denied his right to a public trial, but instead that WITHOUT EVER HAVING KNOWLEDGE OF THAT RIGHT, OR EVER BEING INFORMED OF THAT RIGHT, HE DID NOT EVER INTENTIONALLY ABANDON OR RELINQUISH THAT RIGHT, Sneckloth v. Bustamonte, 412 U.S. 218, 241-42 (1973); Hodges v. Easton, 106 U.S. 408, 412(1982)

3) The State's adopted legal conclusions erroneously cite United States v. Hitt, 473 F.3d 146, 155(5th Cir. 2006) for the proposition to this Court that the Applicant somehow waived his right to a public trial because his defense attorney, who never informed the Applicant of his public trial right, failed to object. See State's Proposed...Findings...Conclusions of Law", p.14, ¶6-7; p.19, ¶57, 59.

4) The Applicant O B J E C T S to the trial Court's adopted misapplication of "Hitt" Id. to this case. See Hitt, 473 F.3d at 155(Where a defendant, WITH KNOWLEDGE, of the closure of the courtroom, fails to object, that defendant waives his right to a public trial). "Hitt" is non-applicable to this case, APPLICANT HAD NO KNOWLEDGE OF HIS RIGHT TO A PUBLIC TRIAL AND EVEN DEFENSE COUNSEL HIMSELF IN HIS AFFIDAVIT STATED THAT HE DID NOT BELIEVE APPLICANT'S PARENTS BEING PROVIDED NO ACCOMODATIONS IN THE COURTROOM, BEING STUCK OUT IN THE HALL DENIED THE APPLICANT HIS RIGHT TO A PUBLIC TRIAL. See Fortinberry Affidavit, p.2(response to Ground #4). The Applicant can not be penalized for not having knowledge his own defense attorney was ignorant of.

5) The Applicant O B J E C T S to the trial court's adoption of the State's erroneous proposition that Applicant failed to prove that the trial court closed the courtroom to the public. See State's Proposed...Findings... Conclusions of Law", p.13, ¶3; p. 15, ¶14

6) All of the evidence in the habeas record that has been developed supports a legal conclusion that the trial court filled every available seat in the public seating area("gallery") with potential juror's leaving no accomodations for the public, See Fortinberry Affidavit, p. 1:

a) "the gallery was full." See Fortinberry Affidavit,p. 1

b) The Reporter's Record proves the public seating area was full with potential juror's. See Application, p. 6-7; Memorandum, p.3-15;[v.3 RR, voir dire].

c) "...the courtroom was full." Fortinberry Affidavit, p 1. There was open space in the jury box where Applicant's parents could have set(conceded by defense counsel) **but not in the public seating area("gallery") "the gallery was full"**. Fortinberry Affidavit, p.1

d) The 396th Judicial District Court only seats approximamately 45 people in the public seating area.

7) The trial court closed the proceeding because the Court entirely failed to fulfill it's **obligation to take every reasonable measure to accomodate public attendance at criminal trials."** Steadman v. State, 360 S.W. 3d 499, **505(Tex.Crim.App.2012)(quoting** Presley v. Georgia, 130 S.Ct. 721, 725(2010)

8) The Applicant O B J E C T S because the adopted legal conclusions,when compared with the indisputable evidence entirely disregard the **Court of Criminal Appeals** and United State's Supreme Court precedent holding that:

**"When determining whether a defendant has proved that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded. Rather a reviewing court must look to the totality of the evidence and determine whether the trial court fulfilled it's obligation 'to take every reasonable measure to accomodate public attendance at criminal trials.'"**

Lilly v. State, 365 S.W. 3d 321, 331(Tex.Crim.App.2012)(quoting Presley, 130 S.Ct. at 725).

9) The trial Court's adopted legal conclusions entirely fail to utilize this Court's precedent for the proper standard of review when determining whether the Applicant has proved that his trial was closed to the public.

10) **ATTACHED TO THIS OBJECTION IS A TIME FILED STAMPED COPY OF: "APPLICANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING HIS GROUNDS #1, #3, & 4...AND ALSO HIS GROUND #2..."** The Applicant **incorporates that attachment into this objection by reference.**

a) Specifically, On Jan. 6, 2015, far in advance of the State proposing any findings or conclusions(State proposed on Jan.20,2015) the Applicant had already properly filed with the Post Conviction writ Clerk at Tarrant County District Clerk's office **the accu-**

rate and correct proposed findings of fact and conclusions of law pertaining to the present Grounds #1-#4.

11) Specifically attached to this objection is a 42 page document that was filed on Jan. 6, 2015 that includes a copy of defense counsel's(Hon. Fortinberry) Affidavit.

12) In concluding here this objection the Applicant asserts that he objects to the trial court's adopted findings of fact and legal conclusions concerning Grounds #1-#4 as being incorrect, inaccurate, and incomplete; AND FURTHER RE-INVOKES THE ATTACHED "APPLICANT'S" PROPOSED FINDINGS AND LEGAL CONCLUSIONS AS BEING CORRECT.

a) Because the Applicant has already filed a copy of "Applicant's proposed findings and legal conclusions with the Tarrant County District Clerk, a true copy of the 42 page document now attached, should have already been sent to this honorable Court by the clerk along with the entire writ transcript, etc.

b) For complete and accurate findings and legal conclusions for Ground #1--- See the attached "Applicant's" proposed findings/legal conclusions at p.1-11

c) For complete and accurate findings and legal conclusions for Ground #2--- See the attached "Applicant's" proposed findings/legal conclusions at p.21-37...(Ineffective Assistance, failure to object to denial of public trial)

d) For complete and accurate findings and legal conclusions for Ground #3--- See the attached "Applicant's" proposed findings/legal conclusions at p.12-16.

e) For complete and accurate findings and legal conclusions for Ground #4--- See the attached "Applicant's" proposed findings/legal conclusions at p.17-20.

-----------------

F: LASTLY, THE TRIAL COURT'S ADOPTED FACT FINDINGS FOR APPLICANT'S GROUND #2 ARE EXTREMELY INCOMPLETE/INCORRECT. See State's Proposed...Findings...Conclusions of Law". p.5, ¶13, ¶14, &¶15 Compare with the correct and complete findings attached in "Applicant's" proposed findings/legal conclusions p.21-37.

1) by defense counsel's own admission, based on his own subjective reasoning at the time of trial, he did not object to Applicant's parents having no accomodations in the public seating area because of INATTENTION AND NEGLECT,

**not** because it was some type of well thought out plan or strategy designed to benifit the Applicant by depriving him of his right to a publis trial which is in itself, **based on this Court's presedent,** for the "benifit " of the Applicant. <u>Cameron v. State,</u> 2014 Tex.Crim.App. , LEXIS 1536, *13.

a) See Fortinberry Affidavit, p.1 asserting: ("I did tell them I did not know where they would sit during voir dire"[**personal knowledge before voir dire began that the gallery was about to be filled with pro-spective jurors**]"I was busy getting ready for jury selection so I did not make an attempt to see to it they had accommodations in the courtroom during voir dire."[admittance of **INATTENTION & NEGLECT, not stra-tegy**].

b) **Please compare the Court's** incorrect finding cited above with the correct and completely accurate finding, **deficient performance-for failing to object** in the attached "Applicant's" proposed findings/legal conclusions at p.25-36(emphasis added).

c) Attorney Fortinberry's failure to object, based on this Court's precedent, and the developed habeas record, was also based on a lack of knowledge of the applicable law. See accurate presentation of law and facts establishing **lack of knowledge of applicable law** attached in "Applicant's" proposed findings/legal conclusions at p.29-36.

d) Hon. Fortinberry's mistaken belief that either Applicant's parents(or the Applicant who was never informed of the public trial right) had a duty to request him to find an **alternative** place for Applicant's parent's to sit since the public seating area was full, in order to somehow activate his duty to attempt to secure Applicant's public trial right is flawed and conflicts severly with Supreme Court precedent. See Fortinberry Affidavit, p. 1(response to Ground #2); See also attached "Applicant's" proposed findings/legal conclusions at p.32, ¶27——p.33

2) THE TRIAL COURT'S ADOPTION OF THE STATE'S LEGAL CONCLU-SIONS CONCERNING GROUND #2 ARE INCORRECT AND CONFLICT HEAVILY THE PRECEDENT OF THIS COURT AND THAT OF THE SU-PREME COURT.

a) The adopted findings/legal conclusions conflict with this Court's well established precedent for analyzing the prejudice prong of "Strickland" involving inef-fective assistance/**structural error claims.** See State-'s Proposed...Findings...Conclusions of Law, p.5 ¶15,&

p.16, ¶23.

b) The Applicant cited the correct precedent from this Court for finding prejudice when the ineffective assistance of counsel Ground is based on **structural error in the Memorandum of Law filed with the Application.** See Memorandum, p.19, &27-28; See also the correct precedent for analyzing deficient performance structural error Grounds——proper standard of review based on this Court's precedent in the attached "Applicant's" proposed findings/legal conclusions at p. 24-25.

c) The correct standard of review for deficient performance/structural error claims was settled by this Court 10 years ago in <u>Johnson v. State,</u> 169 S.W. 3d 223(Tex.Crim.App.2005).

d) The Applicant O B J E C T S to the trial court's adopted legal conclusions failure to abide by the precedent of the honorable Court of Criminal Appeals while attempting to analyze Applicant's Ground #2(Ineffective Assistance of Counsel/Structural Error.)

e) The Applicant O B J E C T S all of the legal conclusions in the trial court's adoption of the State's proposed legal conclusions. See State's Proposed... Findings...Conclusions of Law, p.15, ¶14, p.16, ¶23.

G: THE APPLICANT **OBJECTS TO THE ADOPTED FINDINGS RECOMMENDA-TION THAT RELIEF BE DENIED CONCERNING GROUNDS #1-#4** AND RESPECTFULLY RE-ASSERTS THAT HE HAS CARRIED HIS BURDEN TO SHOW THAT BASED UPON THE PREPONDERANCE OF THE EVIDENCE HE IS ENTITLED TO THE LEGITIMA REMEDIA OF IMMEDIATE HABEAS CORPUS RELIEF, RESPECTIVELY.

<u>PRAYER</u>

The Applicant, Desmond Ledet, humbly and respectfully prays that this honorable Court of Criminal Appeals will exercise this Court's inherent power to disregard incomplete and incorrect fact findings and legal conclusions that are contrary to the record, and that do not follow this Court's precedent, or the precedent of the United State's Supreme Court. as in this case. Furthermore the Applicant prays that this Court **"will enter alternative**

or contrary findings that the record supports." <u>Ex parte Flores</u>, 387 S.W. 3d 626, 635(Tex.Crim.App.2012). This Court can find such correct factual and legal findings,supported by the record, and the law,already laid out in **the attached "Applicant's" propo-ed findings/legal conclusions.** THANKYOU.

Respectfully Submitted,

*Desmond Ledet*

Desmond Ledet   #01651095
Telford Unit
3899 State Hwy.98
New Boston, TX   75570

## CERTIFICATE OF SERVICE

A true copy of the above has been mailed to the Tarrant County, TX Criminal District Attorney's Office, located at 401 West Belknap, Fort Worth, Texas 76196-0201 on Feb. **2,** 2015.

*Desmond Ledet*

Desmond Ledet

NO.C-396-010272-1152016-A          TIME_____

EX PARTE                          §   IN THE 396th JUDICIAL_____ DEPUTY
                                  §
                                  §   DISTRICT COURT OF
                                  §
DESMOND LEDET                     §   TARRANT COUNTY, TX

A P P L I C A N T ' S   P R O P O S E D
F I N D I N G S   O F   F A C T   A N D   C O N C L U S I O N S
O F   L A W   R E G A R D I N G   H I S   G R O U N D S #1, #3, &
#4(DEPRIVATION OF THE PUBLIC TRIAL RIGHT DURING VOIR DIRE)  AND
A L S O   H I S   G R O U N D   #2
(INEFFECTIVE ASSISTANCE BASED ON COUNSEL'S FAILURE TO OBJECT TO
THE DEPRIVATION OF APPLICANT'S PUBLIC TRIAL RIGHT DURING VOIR
DIRE),
PRIOR TO, AND WITHOUT THE BENIFIT OF A LIVE EVIDENTIARY
HEARING, WHICH APPLICANT STILL SEEKS

A: Procedural Background

1. Desmond Ledet was indicted for the alleged offense of Aggravated Sexual Assault of an adult woman.

2. Desmond Ledet pled not guilty in the 396th District Court of Tarrant County, TX.

3. On June 22, 2010 a jury was selected and the Applicant(Desmond Ledet) began a 3 day trial.

4. At the time of trial Desmond Ledet was represented by attorney Curtis L. Fortinberry(Court Appointed). Attorney Fortinberry replaced Applicant's previous Court appointed Attorney on Sept. 14, 2009.

5. The trial was presided over by a **retired sit in judge,** the **Honorable Phillip Vick.**

6. The trial took place approxiamately 5 months after the United State's Supreme Court handed down it's opinion on Jan.19, 2010 in Presley v. Georgia, 130 S.Ct. 721(2010) affirming **that under well settled law, the Sixth Amendment right to a public trial extends to voir dire and that any closure during voir dire must meet the standards provided in 1984 by the Supreme Court in** Waller v. Georgia, 467 U.S. 39(1984).

7. Ultimately Ledet was found not guilty of Aggravated Sex. Assault. Instead he was found guilty of the lesser submitted by the State after the close of the evidence, Sexual Assault. The jury charge allowed the jury to pick between the two.

8. The conviction was affirmed on direct appeal. PDR was refused . This original writ of habeas corpus followed.

**B: These proposed findings have been constructed prior to a live evidentiary hearing, and without the benifit of such hearing , which Applicant still seeks.**

1. The Applicant has filed motions objecting to the lack of a live evidentiary hearing to develop the facts,

2. In the event a hearing is held in the future the Applicant has the right reserved to alter, amend, or supplement these proposed findings.

**C: Procedural History of Post-Conviction Writ of Habeas Corpus**

1. On July 28, 2010, Desmond Ledet filed an Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07.

2. This Writ was assigned cause number: C-396-010272-1152016-A and assigned to the 396th Judicial District Court of Tarrant County, Texas.

3. This was the first post-conviction writ filed related to this conviction.

4. Desmond Ledet alleged 34 grounds seeking habeas corpus relief.

5. These findings relate only to his grounds #1-#4, which relate, in one way or another,to his allegations that he was deprived of his right to a public trial without having knowledge of, or ever intentionally waiving or relinquishing that right,

6. And that his trial attorney, Curtis L. Fortinberry,was ineffective for not objecting to the deprivation of that right(**the Court making no accomodations for his parent's during voir dire, instead filling the gallery with prospective juror's, effectively closing the proceeding from the public, without first of all performing the mandatory test**(which was well settled law at the time of this trial(**laid out in "WALLER" & "PRESLEY"**))).

7. These findings are being proposed prior to and without the benifit of any explaination in the habeas record as to what the trial judge, The Honorable Phillip Vick's, subjective reasoning was, **when he**, failed to perform the "WALLER TEST" prior to filling up the entire gallery with prospective jurors, which left no accomodations for the public. **Nevertheless the Reporter's Record, and Defense counsel's Affidavit on these Grounds,establish by the preponderance of the evidence that he failed to perform the "WALLER TEST" and filled up the gallery leaving no accomodations for the public.**

8. The Applicant did, in his "SUBSEQUENT REQUEST FOR A LIVE EVIDENTIARY HEARING;...UNRESOLVED FACTS PERTAINING TO GROUNDS #1-4..."(on p.2-3 of 5) seek a hearing to, inter alia , obtain factual information from judge Phillip Vick as to "why did he fail to abide by the dictates of 'WALLER' & 'PRESLEY' ...".

9. As stated above the Applicant has filed motions objecting to the lack of a live evidentiary hearing. If one takes place in the future Applicant has the right reserved to alter, amend, or supplement these proposed findings;

10. Although legally a trial court's subjective reasons for not performing the "WALLER TEST", while making no accommodations for the public are irrelevant to the question of whether or not the violation actually occurred, since "a trial judge must at all times maintain control of the process of jury selection." Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 512(1984);

11. &"'trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials.'" Steadman v. State, 360 S.W. 3d 499, 505(Tex.Crim.App. 2012)( quoting Presley, 130 S.Ct. at 725).

12. The Applicant alleged that the trial court's failure to perform the "WALLER TEST", while failing to take every reasonable measure to accommodate the public at his trial denied him his right to a Public Trial, and to Due Process as guaranteed him by the Sixth and Fourteenth Amendment of the United States Constitution, during the entire voir dire proceeding.

C: Because the factual and legal findings for Ground #2(Ineffective Assistance for failing to object to the Court's failure to perform the "WALLER TEST" or make accommodations for the public) are equally supported by the finding and conclusions for Grounds #1.#3, & #4. The findings in support of Ground #2(IAC) will be proposed last. All of the findings for Grounds #1, #3, & #4 are incorporated into the findings and conclusions for Ground #2(IAC).

D: Findings and Conclusions Related to Ground #1(no waiver)

"APPLICANT WAS DENIED WITHOUT INTENTIONAL RELINQUISHMENT OR ABANDONMENT, NOR KNOWLEDGE OF, OF HIS RIGHT TO A PUBLIC TRIAL, AND TO DUE PROCESS, AS GUARANTEED HIM BY THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.(DURING THE ENTIRE VOIR DIRE PROCEEDING)"

1. The Record contains no evidence that the Applicant was ever notified of his right to a public trial or that he ever intentionally relinquished or abandoned that right. There is nothing in the record to indicate at all that he had any know-

ledge of **his public trial right, or what constituted closure.**

2. This was the first time the Applicant had ever been a defendant in a trial.

3. Nothing in the record indicates the Applicant, at the time of trial, was familiar with the mandates of "PRESLEY" or "WALLER," or that he had ever heard of the "WALLER TEST" so that he would have known that the Court's filling up of the gallery(public seating area) with prospective juror's, leaving no room in the gallery for the public to sit, without first of all performing the WALLER TEST was in violation of his Sixth and Fourteenth Amend. right to a public trial.

4. The Supreme Court has noted, "the Constitution requires that every effort be made to see to it that a defendant in a criminal case has not unknowingly relinquished the basic protections that the Framers thought indispensible to a **fair** trial." Sneckloth v. Bustamonte, 412 U.S. 218, 241-42(1973).

5. Consequently, "every reasonable presumption should be indulged against" waiver of a fundamental right. Hodges v. Easton, 106 U.S. 408, 412(1982)

6. The right to a public trial concerns the right to a fair tri-l. Waller, 467 U.S. at 46. ("The requirement of a public trial is for the benifit of the accused; that the public may see he is **fairly** dealt with and not unjustly condemned...").

7. "The question of an effective waiver of a Federal constitutional right in a proceeding is of course governed by federal standards." Boykin v. Alabama, 395 U.S. 238, 243(1969)

8. "Therefore for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or priviledge." Stringer v. State, 241 S.W. 52, 56(Tex.Crim.App.2007)(quoting Johnson v. Zerbst, 304 U.S. 458, 458(1938)(overruled in part on other grounds by Edwards v. Arizona, 451 U.S. 477(1981).

9. The Applicant submitted an "UNSWORN DECLARATION" labeled "Exhibit C" attached to the 11.07's Memorandum's Appendix declaring, on the second page: "**This was the first time I ever been to a trial so I had no knowledge otherwise. The judge never asked me did I know I had a right to a public trial, nor did he explain that right to me and ask me did I choose to freely or voluntarily give up that right. If he had of made me aware of that right I would never have voluntarily made my parents sit out in the hall for well over an hour, If anybody even my lawyer had of made me aware of that right, I would have never given it up. But the truth is no one in that courtroom, absolutely none, not the bailiff, nor the jude, nor my lawyer, nor the state prosecutor, nor anyone, said**

anything to me at all about my right to have my familly in the courtroom. In fact, from the impression given to me by the judge, my lawyer, and the bailiff, I thought it was perfectly normal for the public to be kept out of voir dire , although I did not like it. I was left totally ignorant of my right to a public voir dire proceeding, point blank. In fact the courts decision to exclude the public from voir dire was made in my absence before I even entered the court-room. I was not allowed to be a part of that decision per-iod. I am perfectly willing to be hooked up to any machine or lie detector test or whatever it takes under the penalty of perjury and forfeiting my whole writ, every ground, I do not have any problems with it at all. I am telling the truth. (p.2 of "Exhibit C", Memorandum's Appendix).

10. Defense Attorney, Curtis Fortinberry,did not oppose the Applicant's above said statement, in his Affidavit to this Court addressing Applicant's Grounds #1-#4; the part regarding Applicant's assertion that neither the Defense counsel, nor the trial judge, nor the bailiff, nor the prosecutor notified the Applicant of his public trial right.

11. Defense counsel did not oppose or object to the Applicant's assertion that "I was left totally ignorant of my right to a public voir dire proceeding, point blank."

12. Defense counsel, Curtis Fortinberry's sworn Affidavit to this Court reveals (in his own words) that he : "was busy getting ready for jury selection so I did not make an attempt to see to it that they" Applicant's parents "had accommodations in the courtroom during voir dire."

13. Attorney Fortinberry's above statement makes it clear that he was not attentive to Applicant's public trial right and was busy doing other things besides notifying the Applicant of the public trial right.(A COPY OF AFFIDAVIT IS ATTACHED)

14. Attorney Fortinberry, in his Affidavit made it clear that he himself did not "believe that" Applicant's "parents not being in the courtroom",after conceding that "the gallery was full" "during voir dire",and that the trial judge "did not perform a sua sponte Waller test","constitutes a violation of his sixth and fourteenth amendment rights to a public trial." (Fortinberry's Affidavit-on Grounds #1-#4) ;

15. Which establishes as a fact that Attorney Fortinberry was ignorant of the fact that the sixth and fourteenth Amend. right to a public trial extends to voir dire and did not notify the Applicant of that right he himself was ignorant of.(HIS AFFIDAVIT IS ATTACHED AT REAR OF THESE FINDINGS)

16. Due to the unique facts of this case, the 5th Cir. **holding** that:"Where a defendant with **knowledge** of the closure of the courtroom, fails to object, that defendant waives his right to a public trial" **is entirely non-applicable to this particular case.** United States v. Hitt, 473 F.3d 146, 155(5th Cir. 2006)

17. Not only was the Applicant without **any of the required** knowledge for the reasoning in "Hitt" for finding waiver to apply in this case, but defense counsel in his Affidavit to this court clearly stated: **"to my knowledge the courtroom was not closed to the public."(SEE REAR OF THESE FINDINGS)**

18. "And the defendant cannot object apart from counsel. Due to his lack of **knowledge** in legal procedure, a defendant may not even recognize his attorney's errors(after all, navigating the legal system is what the attorney is there for) and, in any event, the defendant should not have to risk aleinating the attorney, who is the defendant's only advocate in the legal proceeding." Blue v. State, 45 S.W. 3d 129, 140( Tex.Crim.App.2000)(Keller, J., dissenting in which McCormick ,P.J., and Womack, J., joined)(citing Robinson, v. State, 16 S.W. 3d 808, 809-810(Tex.Crim.App.2000).

19. Mr. Ledet can not be faulted for not having legal knowledge that his own defense attorney is ignorant of.

20. The closure in this case was done in a perfunctory manner, no motion was filed(as in "Hitt" at 154) seeking closure that could have been objected to. **This closure was unanounced.**

21. The record, nor defense counsel's Affidavit, does not in any manner recognizable by law, indicate that the Applicant knowingly, or intentionally, relinquished or abandoned the sixth and fourteenth Amendment U.S.Const. right to a public trial during voir dire. **THIS COURT CONCLUDES THE APPLICANT DID NOT WAIVE HIS RIGHT TO A PUBLIC TRIAL AS GUARANTEED HIM BY THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.** See Lilly v. State, 365 S.W. 3d 321, 327-28(Tex.Crim. App.2012)(hearing the public trial claim after finding evidence in the record to rebut any presumption the appellant intended to waive his claim); see also Walton v. Briley, 361 F.3d 431, 434(7th Cir. 2004)(concluding that failure to object at trial did not result in a waiver of defendant's claim that his right to a public trial was violated).

------------------------------------

**E: Findings and conclusions related to Ground #1**(the Court failed to fulfill it's obligation to take every reasonable measure to accommodate public attendance at Desmond Ledet's(Applicant) trial during the entire voir dire proceeding.)

1. The totality of the evidence affirms voir dire was closed.

2. "the **first step** for a reviewing court when analyzing whether a defendant's **right** to a public trial was violated is to determine if the trial was in fact closed to the public." Lilly, 365 S.W. 3d at 329.

3. "whether a particular defendant's trial was closed to the public should be ascertained on a case-by-case basis **after considering the totality of the evidence."** Id. at 330

4. The mere fact that a trial judge never ruled that the voir dire proceedings were closed to the public does not defeat a claim that the proceedings were closed when the totality of the evidence reveals **the Court filled the gallery with prospective jurors, and made no accomodations for the public** . Cameron v. State, 2014 Tex.Crim.App. LEXIS 1536, *2-*15.

5. In this case the Applicant(Desmond Ledet) attached a **copy** of the **Reporter's Record of voir dire** to his writ Application., in the Memorandum's Appendix,which reveals the Court summoned the large panel of prospective juror's to the courtroom all at one time, filling up every available seat, on every row as soon as the 3 day trial began.

6. The trial Court entirely failed to perform the WALLER TEST prior to filling the gallery with prospective jurors.

   a: the Court did not advance an overriding interest that was likely to be prejudiced by accommodating the public.

   b: the Court did not make findings of fact sufficient to support it's failure to make accommodations for the public.

   c: the Court did not consider every reasonable alternative to closing the proceeding,by entirely, failing to fulfill it's obligation, **"to take every reasonable measure to accommodate public attendance at criminal trials",** since in this case Applicant's parents could have set in the empty jury box during voir dire, instead of having to wait in the hall because the gallery was full. Steadman v. State, 360 S.W. 3d 499, 505(Tex.Crim.App.2012)(quoting Presley, 130 S.Ct. at 725).

   d. in this case this Court does not need to determine whether or not the closure was "no broader than necessary to protect" an "overriding interest that is likely to be prejudiced" since the fact is the trial judge did not, prior to filling the gallery with prospective jurors,advance an overriding interest likely to be prejudiced. Steadman,360 S.W. 3d at 504(quoting Waller, 467 U.S. at 48).

7. Defense counsel affirmed in his Affidavit that **during voir dire: "...the Courtroom was full"** and **"the gallery was full. "**

8. Defense counsel confirms in his Affidavit that the trial **"did not perform a sua sponte Waller Test"** prior to filling the courtrooms gallery with prospective jurors.

9. "The burden of considering reasonable alternatives to closure rest squarely upon the trial court itself,..." Steadman, 360 S.W. 3d at 505(citing Presley, 130 S.Ct. at724-25). In this particular case the trial court did not carry that burden.

10. The trial court did not, in order to accommodate the public, reserve "one or more rows for the public" Id.

11. The trial court did not divide "the jury venire panel to reduce courtroom congestion." Id

12. The Reporter's Record establishes as a fact that during voir dire, that although the gallery was full,**the jury box was empty.**(Fortinberry's Affidavit confirms space in courtroom).

13. The **space in the jury box could have not only been used to accommodate Applicant's parents.**, Ralph and Luvenia Ledet, **who waited in the hall** because **no accommodations were made for them in the gallery,** but the trial court could have also opted to place atleast 12 of the huge panel of prospective jurors in the jury box which would have made space for Applicant's parents and the public in the gallery.

14. Applicant's parents were not obligated to damand that accommodations be made for them in the gallery,in order for the trial court,to consider reasonable alternatives to filling the gallery with prospective jurors.

15. "There is no burden on the defendant to proffer alternatives." Id. at 505. The Applicant had no burden to insist that the Court fulfill it's duty to perform the Waller Test and consider reasonable alternatives in **order to activate** the Supreme Court **mandated duty upon the Court to perform the Waller Test prior to closing the proceeding to the public.**

16. In Cameron v State, 2014 Tex.Crim.App. LEXIS 1536, the Texas Court of Criminal Appeals found that the voir dire proceeding was constitutionally closed to the public **even after the trial judge repeatedly stated on record: "It's an open trial ...I've never ruled that the public is excluded...if you want we can open up those doors in the back and have them stand where they can observe and hear every single thing that's going on...I'm telling you that you can have people in this courtroom...I'm not making a ruling that anybody is excluded...I haven't told you that you cannot have people in the courtroom...The court did not close the proceedings by any means...we will do our best to accommodate them in areas around the gallery..."** Id . *1- *8

17. In "Cameron" **regardless** of the trial court's multiple claims on record that the voir dire proceedings were open to the public, the gallery still remained full of prospective jurors. The Court of Criminal Appeals quickly recognized that ; **"the record sufficiently shows that the voir dire proceedings were closed"** Id. at *12.

18. Both of Applicant's parents also submitted Affidavits attached to the Memorandum of law attached to his writ Application explaining that they had to wait in the hall due to the large panel of prospective jurors filling up the gallery.

19. The Applicant also explained in his Unsworn Declaration attached also to the Memorandum that his parents had to wait in the hall during voir dire due to the large panel of prospective jurors.

20. Defense counsel confirmed in his Affidavit that the Applicant's parents were present prior to the outset of voir dire and because of the situation, he claims, that he told them that he did not know where they would sit during voir dire. Which is the same thing the trial court repeatedly said also in "Cameron" **Id.**

21. Based on the Record and the totality of the evidence this court **finds** all allegations that the courtroom was full with prospective jurors during voir dire to be credible.

22. "Cameron"**(Id.)** is a published opinion handed down from the Court of Criminal Appeals on Oct. 8, 2014, prior to this court handing down any facts or conclusions, while this writ of habeas corpus was still pending a recommendation from this court. The CCA's decision in "Cameron" is binding on this court's analysis in this case.

23. **THIS COURT CONCLUDES THAT BASED ON THE TOTALITY OF THE EVIDENCE, IN THIS PARTICULAR CASE, THAT THE VOIR DIRE PROCEEDINGS WERE, IN FACT, CLOSED TO THE PUBLIC.**

24. In furtherance of this conclusion, and although there is sufficient evidence to show that Applicant's parents were present, and desired accommodations in the gallery, this Court takes judicial notice of the opinion in Lilly, at **331**(quoting (Presley, at 725) that: "When determining whether a defendant has proved that his trial was closed to the public, **the focus is not on whether the defendant can actually show that someone was actually excluded. Rather a reviewing court must look to the totality of the evidence and determine whether the court fulfilled it's obligation 'to take every reasonable measure to accommodate public attendance at criminal trials.'"** Defense counsel does not contest the facts in Applicant's parent's Affidavits, saying that once voir dire was over he informed them of when to enter courtroom.

25. THIS COURT CONCLUDES THAT THE TRIAL COURT IN THIS CASE FAILED TO PERFORM IT'S OBLIGATION TO TAKE EVERY REASONABLE MEASURE TO ACCOMMODATE PUBLIC ATTENDANCE AT CRIMINAL TRIALS.'"

26. AS A MATTER OF LAW THE VOIR DIRE PROCEEDINGS WERE CLOSED TO THE PUBLIC.

27. In "Cameron" at *12 the Court of Criminal Appeals stated: "Having held that the voir dire proceeding were, in fact, closed to the public, we move on to the Waller test to determine if this closure was constitutionally justified under the Sixth Amendment."

-------------------------------

F: Findings and Conclusions related to Ground #1 (the closure was not constitutionally justified under the Sixth Amendment)

1. "Under Waller, a closure will be justified only if the trial court makes findings that closure is necessary to protect an overriding interest and the closure is narrowly tailored to protect that interest." Cameron", at *12 (citing Waller, 467 U.S. at 45). THIS COURT CONCLUDES THAT BECAUSE THE COURT DID'-NT MAKE FINDINGS THAT THE CLOSURE WAS NECESSARY TO PROTECT AN OVERRIDING INTEREST, THE CLOSURE WAS NOT CONSTITUTIONALLY JUSTIFIED.

2. "A court also must consider all reasonable alternatives." "Cameron", at *13 (citations omitted) THE JURY BOX WAS OPEN, THE RECORD DOES NOT SUPPORT A FINDING OR CONCLUSION THAT THE COURT CONSIDERED ALL REASONABLE ALTERNATIVES AND SENSIBLY REJECTED THEM. BECAUSE THE TRIAL COURT DID NOT, THIS COURT AGAIN CONCLUDES THAT THE CLOSURE WAS NOT CONSTITUTIONALLY JUSTIFIED.

4. FINALLY, THE TRIAL COURT'S ACTION IN SUMMONING THE HUGE PANEL OF PROSPECTIVE JUROR'S INTO THE COURTROOM ALL AT ONCE, AT THE VERY START OF VOIR DIRE, WHICH FILLED THE GALLERY LEAVING NO ACCOMMODATIONS IN GALLERY FOR THE PUBLIC, FELL BENEATH THE TRIAL COURT'S "OBLIGATION 'TO TAKE EVERY REASONABLE MEASURE TO ACCOMMODATE PUBLIC ATTENDANCE AT CRIMINAL TRIALS.'" Lilly, at 331 (quoting Presley, at 725).

5. THE CLOSURE VIOLATED APPLICANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHT TO A PUBLIC TRIAL.

6. IN 1948 , in In re Oliver, THE SUPREME HELD THAT THE PUBLIC TRIAL TRIAL CLAUSE OF THE SIXTH AMENDMENT APPLIED TO STATE CRIMINAL PROCEEDINGS THROUGH THE FOURTEENTH AMENDMENT. 333 U.S. 257(1948). The closure violated DUE PROCESS.

**G: Conclusion of Law and Recommendation Concerning Ground 1:**

1: This Court, after weighing the evidence from the Reporter's Record, the Application filed, the supporting documentation in the Application, The Affidavits from Defense counsel, and both of Applicant's parents, and Applicant's own "Unsworn Declaration"(statement), as well as the foregoing factual and legal conclusions, etc., concludes by the preponderance of the evidence and applicable law that:

a) The Applicant did not knowingly or intentionally relinquish or abandon his right to a public trial under the sixth and fourteenth Amendments of the U.S. Constitution.

b) The voir dire proceedings were in fact closed to the public.

c) The closure was not Constitutionally justified, and it violated the Applicant's sixth and fourteenth Amendment right to a public trial.

d) The error is **structural - A** "'defendant should not be required to prove specific prejudice in order to obtain relief for a violation'" of this right. Steadman, 360 S.W. 3d at 510(quoting Waller, 467 U.S. at 49-50)("it necessitates a new trial." Id. at 511)

2. **This Court recommends GRANTING the relief sought by the Applicant, Desmond Ledet.**

Signed on this the _____Day of_____20____

(PLEASE SIGN)

_____

Judge Presiding

(**Note:** Again, findings and conclusions regarding Ground #2, in-effective assistance of counsel, will be presented last herein)

### H. Findings and Conclusions Related to Ground #3(sua sponte):

"IN LIGHT OF THE COURT'S FAILURE TO SUA SPONTE PERFORM THE 'WALLER TEST' IN COMPLIANCE WITH 'PRESLEY' & 'WALLER', AND THE FUNDAMENTAL NATURE OF THE RIGHT TO A PUBLIC TRIAL, APPLICANT'S DEPRIVATION OF THAT RIGHT(EXPLAINED IN GROUND #1) CONSTITUTES PLAIN ERROR AS DEFINED BY THE S.CT IN U.S. v. OLANO , 507 U.S. 725(1993)"

1. All of the fact findings and legal conclusions for Ground #1 are incorporated into the findings of facts and conclusions for this Ground #3.

2. The trial judge failed to perform his duty to **sua sponte** perform the "Waller Test".

3. "But Presley also puts the **onus squarely on the trial court** to identify for the record those specific concrete facts" that will justify closure. Steadman, 360 S.W. 3d at 506.

4. "The **burden** of considering reasonable alternatives to closure **rest squarely upon the trial court itself, regardless of what party seeks closure,** and there is no burden on the defendant to proffer alternatives." Steadman, 360(citing Presley 130 S.Ct. at 724-25).

5. In Steadman, reversing for a new trial, the Court Of Criminal appeals held that the trial court did not "satisfy the **'obligation'** that both Presley and Waller **unequivocally impose upon trial courts** 'to consider all reasonable alternatives to closure'" Id. at 510(Citing Waller, at 48).

6. **THIS COURT CONCLUDES THAT THE TRIAL COURT HAD AN UNEQUIVOCAL DUTY TO SUA SPONTE PERFORM THE WALLER TEST. THE APPLICANT IS NOT TO BLAME FOR THE COURT'S FAILURE IN THAT REGARD. NO ACTION OR INACTION, OBJECTION OR FAILURE TO OBJECT, EXCUSES THE TRIAL COURT OF IT'S OBLIGATIONS UNDER PRESLEY AND WALLER TO PERFORM THE WALLER TEST BEFORE IT COULD CONSTITUTIONALLY CLOSE THE VOIR DIRE PROCEEDINGS. THE LAW IS WELL SETTLED. THE DUTY IS A CONTINUING DUTY REGARDLESS OF OBJECTION OR NOT.**
-------------------------------------------------

### I. Findings and conclusions related to ground #3(the public trial right the Applicant was deprived of is fundamental)

1. The Court of Criminal Appeals has referred to the public **trial** right as **"fundamental"** See, e.g., Clark v. State, 365 S.W. 3d 333, 340(Tex.Crim.App.2012).

2. 1999, the United States Supreme Court held that the right to a public trial is so essential to the **integrity** of the criminal justice process that it's violation falls into **"a limited class of fundamental** constitutional errors that defy analysis by harmless error standards." Neder v. United States, 527 U.S. 1, 7(1999)(internal quotations omitted).

3. **THIS COURT CONCLUDES THAT THE SIXTH AND FOURTEENTH AMENDMENT RIGHT TO A PUBLIC TRIAL THE APPLICANT WAS DEPRIVED OF WHEN THE TRIAL COURT FAILED TO SUA SPONTE PERFORM THE WALLER TEST BEFORE FILLING THE GALLERY WITH PROSPECTIVE JURORS LEAVING NO ACCOMMODATIONS FOR THE PUBLIC WAS AND IS A FUNDAMENTAL RIGHT.**

------------------------------------

J. **Findings and Conclusions** related to **Ground #3**(in light of the above facts and conclusions the deprivation of Applicant's right to a public trial(explained in Ground #1) constitutes plain error as defined by the S.Ct. in U.S. v. Olano, 507 U.S. 725(1993)).

1. A reviewing court may grant relief for "plain error" even if the error was not raised and preserved at trial or sentencing .

2. Tex.R.Evid. 103(d) is modeled after the analogous federal provision and substitutes "fundamental" error for which a timely objection is unnecessary for "plain error" in the federal rule.

3. In **Blue v. State,** the Court of Criminal Appeals recognized a "plain error"(judges comment damaging the presumption of innocence)as "fundamental error" citing multitiple "plain error" cases from federal courts while reversing the judgement. **41 S.W. 3d 129, 131-133(Tex.Crim.App. 2000).**

4. **THIS COURT CONLUDES THAT THE DEPRIVATION OF APPLICANT'S RIGHT TO A PUBLIC TRIAL(EXPLAINED IN GROUND #1) CONSTITUTES "PLAIN ERROR" AND IS REVIEWABLE WITHOUT AN OBJECTION.**

5. Plain error is error that is "clear" or "obvious" and affects the defendant's "substantial rights". Olano, 507 U.S. at 732-735.

6. This Court **CONCLUDES** that it was "clear and obvious" to the trial judge that he had filled the gallery with prospective juror's, failing to accommodate the public, and without first of all sua sponte performing the "Waller Test" .

7. Even though defense counsel failed to object the trial judge had a personal obligation, a continuing duty, regardless of whether a party objected or not, to sua sponte perform the "Waller Test" prior to filling the gallery with prospective

jurors, making no accommodations for the public, in violation of the Sixth and Fourteenth Amendment of the United States Constitution.

8. This Court **concludes** that the public trial right is so fundamental that it was **clear & obvious** to the "trial judge", who in order "To **preserve fairness ...must** at all times maintain control of the process of jury selection", that his actions deprived the Applicant of his right to a public trial, and were not in compliance with <u>Presley</u> and <u>Waller</u>. <u>Press-Enterprise Co. v. Superior Court,</u> 464 U.S. 501, 512(1984).

9. This Court **concludes** that the error affected Applicants **"substantial rigts."** Olano, 507 U.S. at 734-35.

10. This Court **concludes** that the trial judge, through his actions, closed the courtroom during voir dire in violation of <u>Waller</u> and <u>Presley</u>, the error is structural, not harmless——**prejudice is automatically presumed**——and **a violation of substantial rights has occurred.**

11. In <u>Johnson v. United States,</u> 520 U.S. 461, 468-69(1997),the Supreme Court noted the existence of a limited class of cases, such as <u>Waller</u>, where the errors involved do affect substantial rights.

12. Relief for Plain Error may be granted only if the error " **seriously affects the fairness, integrity,or public reputation of judicial proceedings."** <u>Olano,</u> 507 U.S. at 736

13. This Court **concludes** that the deprivation of Applicant's right to a public trial in this particular case impacts the fairness, integrity, and public reputation of Applicant's trial.

14. The public trial right Applicant was deprived of, without ever having waived it, is important because **"the spectators learn about their government and acquire confidence in their judicial remedies."** <u>In re Oliver,</u> 333 U.S. at 270 n.24(1948)( citations omitted).

15. In <u>In re Oliver</u> and <u>Waller</u>,the Supreme Court incorporated the public trial right under the Fourteenth Amendment, using a test based on fairness principles.

16. The constitutional right to a public trial, Applicant was deprived of during voir dire, ensures **fairness,** maintains **public confidence** in the criminal justice system, provides an outlet for community reaction to crime, **provides incentives for judges and prosecutors to handle their duties responsibly, encourages witnesses to come forward, and discourages perjury.** <u>Waller,</u> 467 U.S. at 46.

17. Press-Enterprise Co. v. Superior Court, 464 U.S. at 508-09 (Public Trial helps ensure fairness).

18. Public trials place "effective restraint on possible abuse of judicial power." In re Oliver, at 270

19. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604-05 (1982)(public trials promote informed discussion of governmental affairs)

20. "Essentially ,the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings. A **fair** trial is the objective. and a 'public trial' is the **institutional safeguard for attaining it.**" Estes v. Texas, 381 U.S. 532, 588(1965)(Harlan, J., concurring)(citation omitted).

21. " The corrective influence of public attendance at trials for crime was considered important to the liberty of the people, and it is only by steadily supporting the safeguard that it is kept from being undermined and finally destroyed". Davis v. united States, 247 F.3d 394, 395(8th cir. 1917).

22. "The purpose of the public trial was to guarantee that the accused would be **fairly dealt with and not unjustly condemned. History has proven that secret tribunals were effective instruments of oppression.**" Estes v. Texas, 381 U.S. 532, 538-39(1965).

23. Based on all the foregoing facts,and legal findings and citations, and because "our system of law has always endeavored to prevent even the probability of unfairness "and "... "justice must satisfy th appearance of justice", **THIS COURT AGAIN CONCLUDES THAT THE CLEAR AND OBVIOUS ERROR NOT ONLY AFFECTED APPLICANT'S SUBSTANTIAL RIGHTS, BUT ALSO DEFINATLY AFFECTED THE FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF APPLICANT'S TRIAL.** In re Murchison, 349 U.S. 133, 136( 1955)

-----------------------------------------------

**K. Conclusions of Law and Recommendation Concerning Ground #3:**

1. This Court, after weighing the evidence from the Reporter's Record, the Application filed, the supporting documentation in the Application, etc., as well as the foregoing factual and legal conclusions for this ground and ground one, etc., concludes by the preponderance of the evidence and applicable law that:

a) The trial judge had a sua sponte duty under <u>Waller</u> and <u>Presley</u> to perform the Waller test before he could constitutionally justify filling the gallery with prospective jurors, leaving no accommodations for the public.

b) the trial judge failed to perform the above said sua sponte duty/obligation.

c) the public trial right Applicant(Desmond Ledet) was deprived of is a fundamental right under both State and Federal precedent.

d) The closure that violated both <u>Waller</u> and **<u>Presley</u>** in this trial during the voir dire proceeding is per se structural error, error the Applicant did not waive, that meets the plain error test and requires reversal because:

   1. it is **clear and obvious**
   2. it clearly implicates substantial rights, being structural error.
   3. it is the kind of defect that seriously impacts the "integrity or public reputation of judicial proceedings," thus meeting the requirements of <u>Olano,</u> 507 U.S. at 736(quotations omitted).

   4. it is the type of error that affects adversely the **fairness of the trial.**

   5. It is **PLAIN ERROR.**

   6. It meets all four prongs of <u>Olano</u> to be deemed plain error, and;

   7. absent an objection, as in this case, **this Court concludes this plain error can, and should be corrected.**


2. **This Court recommends GRANTING the relief sought by the Applicant, Desmond Ledet.**

Signed on this the_____Day of_____20_____

                  **(PLEASE SIGN)**


_____
                  **Judge Presiding**

**L. Findings and Conclusions Related to Ground #4**(fundamental error)

"THE DEPRIVATION OF APPLICANT'S SIXTH AND FOURTEENTH AMEND. RIGHT TO A PUBLIC TRIAL(EXPLAINED IN GROUND ONE OF THIS WRIT) CONSTITUTES FUNDAMENTAL ERROR OF A RIGHT PERSONAL TO THE BENIFIT OF THE APPLICANT, REVIEWABLE ABSENT AN OBJECTION FROM DEFENSE COUNSEL."

1. All of the fact findings and legal conclusions for Ground #1, and #3, are incorporated into the findings of fact and conclusions for this ground #4.

2. The Applicant contends in his Ground #4 that:

   a) The right to a public trial he was denied during voir dire is a fundamental right;

   b) The sixth & fourteenth Amendment right to a public trial( **unlike the publics 1st Amend. right to be present)** is a right personal to the benifit of the accused;

   c) And for those reasons combined with the fact that he did not waive that right(as explained in Ground #1) the error is reviewable regardless of the fact his trial attorney, entirely failed to object to the error at trial.

3. The writ of Habeas Corpus lies to correct "defects or denials of **fundamental constitutional rights.**" **Ex** parte Tovar, 901 S.W. 2d 484, 485(Tex.Crim.App.1995).

4. The Supreme Court holds that the right to a public trial is so essential to the integrity of the criminal justice process that it's violation falls into **"a limited class of fundamental constitutional errors that defy analysis by harmless error standards."** Neder **v.** United States, 527 U.S. 1, 7 (1999)(internal quotations omitted).

5. The Texas Court of Criminal Appeals has also referred to the public-trial right as "fundamental". Clark v. State, 365 S.W. 3d 333, 340(Tex.Crim.App.2012).

6. "Fundamental" is defined as -of, affecting, or serving as a base or foundation; **essential;primary**(the fundamental rules) ,etc.(Oxford Pocket American Dictionary of Current English)

7. **"Beginning in the 16th Century,** jurors were selected in public" Press-Enterprise Co. v. Superior Court, 446 U.S. 501 , 507 (1984). **"Public jury selection...was the common practice in America when the Constitution was adopted."** Id. at 508

8. THIS COURT **CONCLUDES THAT THE RIGHT TO A PUBLIC TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENT IS A FUNDAMENTAL RIGHT** IN WHICH THE APPLICANT WAS DEPRIVED OF DURING THE VOIR DIRE PROCEEDING OF HIS TRIAL.

M. **Findings and Conclusions Related to Ground #4**(the sixth Amendment right to a public trial, made applicable to the state of Texas through the fourteenth Amendment of the U.S. Constitution, is a right personal to the benifit of the accused).

1. This Court **concludes** that the **LAW** has long held that a public proceeding **"is for the benifit of the accused;** that the public may see he is fairly dealt with and not unjustly condemned and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions...." In re Oliver, 333 U.S. at 270 n.25(citations omitted)

2. "In addition to ensuring that the judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." Waller, 467 U.S. at 46.

3. This Court **concludes** that the public trial right benifits the accused personally because it produces a more reliable result by discouraging perjury and engendering fairness.

4. This Court **concludes** that the accused benifits personally from a public trial because it is "true as a general rule that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings. A fair trial is the objective, and 'public trial' is an institutional safeguard for attaining it." Estes v. Texas, 381 U.S. 532, 588(1965)(Harlan, J., concurring )(citation omitted).

5. "Our cases have uniformly recognized the public trial guarantee as one created for the **benifit of the defendant.**" Ganett Co. v. DePasquale, 443 U.S. 386, 380(1979).

6. This Court **concludes** that the public trial right benifits the accused personally under the sixth and fourteenth Amendment because it "serves to guarantee the fairness of trials and to bring to bear the **benificial effects of public scrutiny**'upon the administration of justice" Cox Broad.Corp. **v.** Cohn, 420 U.S. 469, 492(1975).

7. **"the requirement of a public trial is for the benifit of the accused."** Waller, 467 U.S. at 46(quotations omitted).

8. This Court **concludes** that in 2010, the United State's Supreme Court, in <u>Presley</u>, 130 S.Ct. at 725, reiterated again that " Our cases have uniformly recognized the public trial guarantee as one **created for the benifit of the Defendant.**"(quoting <u>Gannett Co. v. DePasquale,</u> 443 U.S. 368, 380(1979).

9. **THIS COURT CONCLUDES THE SIXTH AND FOURTEENTH AMENDMENT RIGHT TO "PUBLIC TRIAL" IS A RIGHT PERSONAL TO THE BENIFIT OF THE DEFENDANT, UNLIKE THE 1st AMENDMENT RIGHT FOR THE PUBLIC.**

10. **THIS COURT FURTHER CONCLUDES THAT SINCE THE RIGHT TO A PUBLIC TRIAL RAISED IN THIS WRIT WAS CREATED FOR THE BENIFIT OF THE APPLICANT, DESMOND LEDET, THEN ONLY THE APPLICANT HAD THE RIGHT TO WAIVE IT, AND HE DID NOT WAIVE THAT RIGHT.**

---------------------

**N. Findings and Conclusions Related to Ground #4(**the reviewing Court can review this fundamental error of a Constitutional right created for the benifit of the Applicant that he never waived even though his trial attorney failed to object to the error)

1. This Court recognizes the doctrine of fundamental error.

2. This Court **concludes under the doctrine of fundamental error** the Applicant can complain of the trial court's (1) filling the gallery with prospective jurors, (2) leaving no accommodations in the public seating area for the public to be present, (3) resulting in his parent's having to wait in the hall the entire voir dire proceeding, (3) without ever,first of all, prior to doing so, (4) fullfilling it's mandatory obligation under <u>PRESLEY & WALLER</u> to perform the mandated WALLER TEST, or (5) ever fulfilling it's obligation under <u>PRESLEY</u> to take every measure to accommodate public attendance at criminal trials.

3. "The traditional term in Texas' criminal law that corresponds to "plain error" is "fundamental error". <u>Jimenez v. State,</u> 2000 Tex. Crim. App. LEXIS 81, *12-13(Tex.Crim.App. 2000).

4. This Court **concludes** the fundamental error(above), is structural error affecting Applicant's substantial rights.

5. The Court of Criminal Appeals has made it clear that: **"we are authorized to take notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court."** <u>Blue</u>,45 S.W. 3d at 131.

6. This Court **concludes** "that the fundamental conception of a fair trial includes...the right to have the proceedings open to the public", and **review of this fundamental error is justified.** <u>Estes,</u> 381 U.S. at 560(Mr. Chief Justice Warren con-

curring).

------------------------

**O. Conclusions of Law and Recommendation Concerning Ground #4**

1. This Court, after weighing the evidence from the Reporter's Record, the Application filed, the supporting documentation in the Application, etc.,as well as the forgoing factual and legal conclusions for this ground,as well as ground one and three, etc. concludes by the preponderance of the evidence and the applicable law that:

   a) The violation of Applicant's Sixth and Fourteenth Amendment right to a public trial as laid out in ground #1 is **fundamental error** of Constitutional magnitude.

   b) The Sixth and Fourteenth Amendment right to a public trial is, and has been repeatedly deemed to be, by the United State's Supreme Court, **created for the benifit of the accused.**

   c) The Applicant never, personally waived that right, nor was he ever informed of that right by defense counsel, or the trial court. (unopposed by defense counsel,or the Record)

   d) While the right to a public trial is fundamental in and of itself, it is also above valuation of it's importance to **the preservation of the fundamental right to a fair trial.**

   e) Absent an objection from defense counsel at trial, in this particular case, **review** under the doctrine of fundamental error,**is legally justified.**

2. **This Court recommends GRANTING the relief sought by the Applicant, Desmond Ledet.**

Signed on this the _____ Day of_____20 _____

       (**PLEASE SIGN**)

_____

       **Judge Presiding**

## DEFENSE COUNSEL, CURTIS FORTINBERRY, WAS INEFFECTIVE

**P. Findings and Conclusions Related to Ground #2**(Constitutionally deficient performance/Structural Error)

"APPLICANT SUFFERED A STRUCTURAL DEFECT DUE TO DEFENSE COUN- SEL'S DEFICIENT PERFORMANCE(NOT OBJECTING TO THE EXCLUSION OF MR. & MRS. LEDET FROM VOIR DIRE PROCEEDINGS WHICH VIOLA- TED THE PUBLIC TRIAL RIGHT GUARANTEED UNDER THE 6th & 14th Amend., U.S. Const.); ABSENT ERROR APPLICANT WOULD HAVE A- VAILED HIMSELF OF PUBLIC TRIAL RIGHT."

1. On the first page of this ground #2, page 8 in the writ Appli- cation, the Applicant specifically states: **"GROUND 1 IS INCOR- PORATED INTO THIS GROUND."**

2. Ground #1 is:

"APPLICANT WAS DENIED, WITHOUT INTENTIONAL RELINQUISHMENT OR ABANDONEMENT, NOR KNOWLEDGE OF, OF HIS RIGHT TO A PUBLIC TRI- AL, AND TO DUE PROCESS, AS GUARANTEED HIM BY THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION(DURING THE ENTIRE VOIR DIRE PROCEEDING).

3. This Court **concludes** that the Applicant is alleging that his defense attorney is ineffective for not objecting to the un- constitutional violation of his right to a public trial that he raised in Ground #1, that resulted in his parent's being excluded from the voir dire proceedings, which defense counsel also did not object to.

4. In the writ Application pages(p.8-9) for Ground #2 the Appli- cant **specifically alleges his defense attorney, Curtis Fort- inberry was ineffective because:**

a) "Defense counsel, Curtis Fortinberry, did not object to the exclusion of the Applicant's parents from the voir di- re proceedings." (Appli. at p.8)

b) "Defense counsel was aware of the closure before voir dire began yet:

1) made no objections" (Appli. at p.9)

2) did not inform the Applicant or his parents of the pub- lic trial right" (Appli. at p.9)

3) did not request the Court to fulfill it's **duty to per- form the 'WALLER' Test"** (Appli. at p.9)

4) **did not object to closure without justification through**

> a finding of the Court of some overriding interest likely
> to be prejudiced by allowing Mr. & Mrs. Ledet inside of
> the proceedings." (Appli. at p.9)

> 5) Made no attempts to secure a public voir dire at all." (
> Appli. at p.9)

5. In all the Applicant has alleged defense counsel is ineffect-ive in relation to this ground for **6(six)** seperate, yet mutual, connected reasons.

6. The Applicant also contends that in regards to the prejudice prong of "**Strickland**" the error is structural and he is entitled to a limited prejudice inquiry. (**pages 19, 27-28** of the Memorandum of law attached to the writ Application).

7. In support of his assertion that the law holds he is entitled to a limited prejudice inquiry the Applicant relies heavily on Johnson v. State, 169 S.W. 3d 223, 231(Tex.Crim.App.2005)(citations omitted)(explaining the limited prejudice inquiry for ineffective assistance/structural error claims); And Owens v. U.S., 483 F.3d 48, 64(1st. Cir. 2007)(an ineffective assistance case based on an attorney's failure to object to the deprivation of the right to a public trial).

---------------------------------

Q. To successfully assert that trial counsel's failure to object amounted to ineffective assistance of counsel, the Applicant must state the nature of the objection or objections that defense counsel failed to make, and he must show that the trial judge would have committed error in overruling such an objection. Ex parte Martinez, 330 S.W. 3d 891, 901(Tex.Crim.App. 2011).

1. The Applicant has stated what objections should have been made:

   a) In the heading of Ground #2 he stated that his defense attorney did not object to the exclusion of his parent's , who represented the public, from voir dire, and that the exclusion:"**VIOLATED THE PUBLIC TRIAL RIGHT UNDER THE 6th & 14th Amend., U.S. Const.** "

   b) On page 26 of the Memorandum of law attached to the writ Application the Applicant stated for this Ground: "**Failing to object to the deprivation of the safeguard of the 6th & 14th Amend. public trial right was deficient performance.**"

   c) On page 26 of the Memorandum the Applicant also argued: " **Curtis Fortinberry should have objected under the Sixth and Fourteenth Amend. U.S. Constitution right to a public trial. He also could have cited Waller,supra or Presley,su-**

pra in his objection. He should have objected to the **Wal-ler Test Requirements** not being met. He could have object-ed that those same requirements were reiterated in **Presley** , and not being met."

d) On page 27 of the Memorandum of Law attached to the writ Ap-plication the Applicant argued that: "**defense counsel had ample time to object to the closure before the trial began.** "

2. As shown above in section (P)(4)(a) & (b) the Applicant cited in the Application pages for this ground(p.8-9) the same or similar objections counsel should have made that he argued in the Memorandum.

## THIS COURT'S CONCLUSIONS ARE NOT BASED IN THE DISTORTING EFFECTS OF HINDSIGHT REGARDING DEFENSE COUNSEL'S PERFORMANCE

R. All of the findings of fact and conclusions of law for Grou-nds #1, #3, & #4 previously proposed are incorporated into this Ground #2 alleging defense counsel was ineffective for not objecting to the violation of Applicant's right to a pu-blic trial under the 6th & 14th Amendment,and **Presley** and **Waller**.

------------------------------------

S. The Applicant, Desmond Ledet, was represented by the honora-ble Curtis L. Fortinberry.

1. The honorable Curtis L. Fortinberry filed an Affidavit in response to a Court order that he do so addressing these Grounds. His Affidavit was filed with the Clerk on Nov. 20th, 2014.

2. Attorney Fortinberry's Affidavit, has supplied this Court with his personal subjective reasoning from his personal perspective at the time of trial in relation to this Grou-nd.

3. Attorney Fortinberry also **voluntarily** addressed Applicant-'s Ground's #1, #3, & #4 in his Affidavit, further supply-ing this Court with his personal subjective reasoning **from his personal perspective at the time of trial** in re-lation to those grounds.

4. This Court **concludes** that because Attorney Fortinberry has **provided evidence of his personal subjective reasoning**,being based on his **personal perspective at the time** the Applicant alleges **he should have objected** to the violation of the public trial right, then this Court's **factual and legal conclusions** regarding the reasonableness of his decision not to object **are**

not at all grounded in any second guessing with the distorted benifit of hindsight. Strickland v. Washington, 466 U.S. 668, 689-90(1984).

------------------------------------THE PREJUDICE PRONG

T. The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. Yarborough v Gentry, 540 U.S. 1,5(2003)(per curium).

1. This Court **recognizes that most** ineffective assistance claims are analyzed under the well known "Two-Prong Test" of Strickland, 466 U.S. at 687, 691-92.

2. Because this Court is bound by law to follow the precedent of the **Texas Court of Criminal Appeals,** and the United State's Supreme Court, this Court **concludes** that it must analyze this particular ineffective assistance of counsel ground under the "Strickland" framework, **yet,** excepted from the **straightforward application of Strickland's requirements.**

3. Under the usual "Strickland Two- Prong Test", in order for an Applicant to obtain reversal of his conviction and a new trial, the Applicant would have to show:(1) That his lawyers performance was deficient, and:(2) aside from his lawyer's deficient performance there is a reasonable probability that the trials outcome would have been different. **Id.**

4. In Johnson v. State, 169 S.W. 3d 223, 230(Tex.Crim.App.2005) the Texas Court of Criminal Appeals held that "Besides the complete denial of counsel, there are only two situations **excepted from the straightforward application of Strickland's requirements to defense misconduct:** (1) a conflict of interest and:(2) **deficient performance regarding a right the violation of which would constitute a** structural defect."

5. "To avoid the requirements of Strickland, the defendant's complaint must reveal **error attributable to the court, and not simply defense counsel."** Id. at 233

6. This Court **concludes** that because the trial court failed at it's **duty** to perform the **"Waller Test",** and failed to fullfill **it's obligation** under Presley to take every reasonable measure to accommodate public attendance at criminal trials, that this particular ineffective assistance of counsel ground is a complaint that reveals **"error attributable to the trial court and not simply to defense counsel."** Johnson, 169 S.W. 223, 230.; Presley, 130 S.Ct. at 725; Lilly, 365 S.W. 3d at 331; Steadman, 360 S.W. 3d at 505("Presley also puts **the onus squarely on the trial judge").**

7. In Steadman the Court of Criminal Appeals emphasized: "the burden of considering reasonable alternatives to closure rest squarely upon the trial court itself...and there is no burden on the defendant to proffer alternatives" Id. at 505.

8. The Court of Criminal Appeals, in Johnson, laid out clearly the proper analysis for this particular ineffective assistance of counsel claim in regards to harm.

9. The Court said:

> "The appropriate standard of harm or prejudice depends upon the answers to two questions: First, is the deprivation of a defendant's right...,caused by defense counsel, an error that is properly attributable to the trial court? Second, is the deprivation of a defendant's right...the kind of violation that is properly characterized as a 'structural' defect?...If the answer to both is 'yes'(attributable to the trial court and a structural defect) then the deprivation is constitutional error of 'the 'structural' variety and no analysis of harm or prejudice is conducted."

Johnson, 169 S.W. 3d at 228.

10  This Court concludes that under the above said "Johnson" analysis for ineffective assistance of counsel claims for structural error,attributable to the trial court and not just simply defense counsel, the Applicant has realisticaly and undeniably established that his Ground #2 is that type of a claim.

11. This Court further concludes, that no analysis of harm or prejudice needs to be conducted.

12. This Court concludes that under the above said Johnson analysis, the Applicant, Desmond Ledet, has satisfied the second prong of Strickland.

13. To obtain habeas corpus relief the Applicant needs only to Satisfy the deficient performance prong of Strickland.

-------------------------------------------

U.                        THE DEFICIENT PERFORMANCE PRONG

1. Under the performance prong, there is a presumption that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 1609.

2. This Court concludes that based upon defense counsel's own admission, his failure to object was not a strategy or tactic.

3. Based upon Attorney Fortinberry's own admission in his Affidavit , **his failure to object to the violation of Applicant's public trial right, and the exclusion of his parent's during voir dire, was based on <u>inattention</u> and <u>neglect.</u>** amongst other reasons, that justify a conclusion from this Court that his performance was deficient.**(COPY OF AFFIDAVIT IS ATTACHED).**

4. Attorney Fortinberry reveals in his Affidavit response to Applicant's Ground #1 that he did in fact go out into the hall and speak with Applicant's parents prior to the start of voir dire.**(AFTER THAT HE ASSERTS THAT HE BECAME TOO "BUSY")**

5. The Applicant and his parent's(who presented Affidavit's) version of what Attorney Fortinberry's conversation with them entailed out in the hall before voir dire began, **conflicts slightly,**with Attorney Fortinberry's version of what he said to them out in the hall before voir dire began.

    a) Based upon the Affidavits submitted by both of the Applicant's parent's(labeled Exhibit A & B in the Memorandum's Appendix) Attorney Fortinberry came out in the hall to: **(1)** speak with them prior to voir dire early in the morning on the first day of trial; and **(2) to get free world clothes from them** for their son, the Applicant,to wear once he entered the courtroom so that he would not be dressed in prison garb; and (3) **to inform them that there would be no where for them to sit in the courtrooms public seating area because the trial court was bringing in a large panel of prospective jurors who would take up all of the seats leaving no accommodations for them in the gallery;** and **(4)** that the trial court would not allow any public in until voir dire was over due to space concerns; and **(5)** after voir dire was over Attorney Fortinberry came back out in the hall, informed them of a recess and told them what time to report back to be allowed in to witness the guilt innocence phase.

    b) In **contrast,** Attorney Fortinberry swears under oath: (1) that **he told Applicant's parent's that he did not know where they "would sit during voir dire."**(Affidavit response to Ground #1); and (2) "I never said they were not allowed in the courtroom"; and (3) **"I was <u>busy</u> getting ready for jury selection so I did not see to it they had accommodations in the courtroom during voir dire."**

6. While the two versions slightly differ, both versions establish for this Court enough facts for this Court to conclude:

    a) Prior to the outset of voir dire Applicant's parents were present and ready to enter trial.

    b) Before voir dire began, Attorney Fortinberry came out in the hall and spoke with them about the fact that there was going to be a seating problem for them during voir dire.

p.26 of 42

c) By attorney Fortinberry's own admission,he, having know-
ledge before hand, after speaking with Applicant's par-
ents,**chose not to object even before voir dire began,** and
instead chose to,in his own words,become: **"busy getting
ready for jury selection so I did not see to it they had
accommodations in the courtroom during voir dire."**

d) Attorney Fortinberry did not consider securing his own
client's right to a public trial under the sixth and four-
teenth Amendment of the United States Constitution to be
of significant importance in comparison to whatever else
he may have been doing, which he does not say, that sup-
posedly kept him to busy to object to the violation of
the public trial right.

e) Since he was too busy to see to it they had accommoda-
tions then, even though the trial court as seen in the re-
cord failed to perform Waller Test, etc., his failure to
**object could not have possibly been based on any reasoned
well planned or thought out trial strategy.**

f) Since he was too busy to **be concerned with making sure the
public trial right was** secured, instead of violated, **his
failure to object was the product of <u>inattention</u> and <u>ne-
glect.</u>**

7. A decision cannot be fairly characterized as "strategic" un-
less it is a conscious choice between two legitimate and ra-
tional alternatives. It must be born of deliberation and not
happenstance, inattention, or neglect. <u>Wiggins v. Smith</u>, 539
U.S. 510, 526(2003).

8. This Court further **concludes** that once voir dire actually be-
gan:

a) Defense counsel was aware, based upon his own admission
that: "...**the courtroom was full"** with potential jurors
and the Applicant's parents **were still** out in the hall.
(His Affidavit response to Ground #1).

b) And **"the gallery was full"** leaving no accommodations for
the public, while having knowledge that Applicant's par-
ents who he had earlier spoken with in the hall, **were
still in the hall as a result of the unconstitutional si-
tuation.**(His Affidavit response to Ground #2).

c) Defense counsel, based upon his own admission, was aware
that the trial judge had filled up the courtroom, leaving
no accommodations for the public **without first of all per-
forming the Supreme Court mandated "Waller Test"** (His Af-
fidavit response to Ground #3). Attorney Fortinberry spe-
cifically stated: "I can not speak for the trial judge as
to why **he did not perform a 'sua sponte' 'Waller Test'" Id.**

9. This Court further **concludes** that once voir dire began Attorney Fortinberry could not have been **"busy"** preparing for voir dire **anymore**, yet based upon **neglect** and not strategy, he still failed to object to the apparent deprivation of Applicant's right to a public trial during voir dire.

10. This Court **concludes** that defense counsel's failure to object was based on inattention and neglect, **and this Court owes no "deference to counsel's judgements,"**(Strickland, 466 U.S. at 689), **in this matter, they were not based on strategy.**

11. This Court **concludes** that since Attorney Fortinberry's failure to object was not based on any strategy by his own admission, the presumption that counsel's strategy and tactics fall **"within the wide range of reasonable professional assistance"** is perfectly rebutted by the preponderance of the evidence to the contrary. (Strickland, 466 U.S. at 689).

12. Because defense counsel's failure to object was based on inattention and neglect this Court **concludes** that considering the totality of the circumstances, **the decision not to object fell beneath an objective standard of reasonableness.** (Strickland, 466 U.S. at 687-88).

---------------**FURTHER EVIDENCE OF DEFICIENT PERFORMANCE**

U. Both the performance component and the prejudice prong of Strickland are mixed questions of law and fact. Id. at 698.

1. Based on the following this Court **concludes that Attorney Fortinberry's performance was deficient as a matter of law in regards to Ground #2:**

2. "The right to the effective assistance of counsel is recognized not for it's own sake, but because of the effect it has on the ability of the accused to receive a fair trial" United States v. Cronic, 466 U.S. 648, 658(1984).

3. Strickland established that :"Most important, in adjudicating a claim of actual ineffectiveness of counsel...**the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."** Id at 696.

4. The United States Supreme Court has repeatedly emphasized that the right to a public trial **ensures fairness, discourages perjury** etc. See these findings p.14-15, & 18-19.

5. Recently the Texas Court of Criminal Appeals handed down it's opinion in Cameron v. State, again emphasizing the critical relationship between the **fairness** of a trial and the right to a public trial. 2014 Tex. Crim.App. LEXIS 1536, *13. (handed down October 8, 2014).

6. In Cameron *13 the CCA(quoting Waller, 467 U.S.., at 46, & Press-Enterprise, 464 U.S. at 510)stated: "The requirements of a public trial is for the benifit of the accused;" (emphasis added) "that the public may see he is **fairly dealt with and not unjustly condemned...a public trial encourages witnesses to come forward and discourages perjury...Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness."** ----------------

7. The Supreme Court has repeatedly emphasized that; **"it is through counsel that the accused secures his other rights."** Kimmelman v. Morrison, 477 U.S. 365, 377(1986)(citing Main v. Moulten, 474 U.S. 444, 446(1940); Chronic, 466 U.S. at 653 )

8. "An accused is entitled to be assisted by an attorney, whether retained or appointed, **who plays the role necessary to ensure that the trial is fair**." Strickland, 466 U.S. at 685

9. Based on the foregoing law this Court **concludes that the Applicant's lawyer was deficient and the Applicant had constitutionally ineffective assistance of counsel.** His lawyer was not effective at securing his right to a public trial. In turn his lawyer failed to secure his right to a **fair** trial by **not se-securing the public trial right,**or at least attempting to do so. Had an objection to the closure been overruled by the trial court, it would have constituted reversible error. The Applicant pointed this Court to sufficient State and Federal precedent in his Memorandum of law attached to his writ Application to establish by the preponderance of the evidence that had Attorney Fortinberry lodged a proper objection, the trial court would have committed reversible error by overruling that objection. (Memorandum of Law at p.20-23,& 26-27).

-------------**LACK OF KNOWLEDGE OF APPLICABLE LAW**

10. Although this Court, **concludes** that the above legal and factual findings and conclusions are sufficient to establish that defense counsel was ineffective in this matter,this Court **further concludes that Attorney Fortinberry's Affidavit reveals that his failure to object, was, inter alia, based on a lack of knowledge of the applicable law.** This Court has already concluded that the failure to object was not tactical.

11. "A criminal defense attorney must have a firm command of the **...governing law before the lawyer cam render reasonably effective assistance."** Ex parte Welborn, 785 S.W. 2d 391, 393 (Tex.Crim.App.1990).

12. "Ignorance of well-defined general laws, statutes , and legal propositions **is not excusable** and such ignorance may **lead to a finding of constitutionally deficient** assistance of counsel, but the specific legal proposition must be well considered and clearly defined." Ex parte Chandler, 182

p.29 of 42

S.W. 3d 350, 358(Tex.Crim.App.2005).

13. "Counsel's performance will be measured against the state of the law in effect during the time of the trial..." Id. at 359

14. Based on the following this Court concludes that at the time defense counsel failed to object to the violation of Applicant's public trial— the unconstitutional exclusion of his parents from voir dire proceedings—the law was well settled that the 6th & 14th Amendment right to a public trial extends to jury voir dire and that closure during that stage must meet the standards provided in WALLER.:

15. It was on the morning of June 22, 2010 when defense counsel, Curtis Fortinberry, failed to object to the violation of the Applicant's right to a public trial during voir dire.

16. A little over 5 months earlier, on Jan 19, 2010, the United States Supreme Court held in a per curium opinion, that the law was already well settled that the Sixth Amendment right to a public trial extends to jury voir dire and that closure during that very critical stage must meet the standards provided in Waller. Presley v. Georgia, 131 S.Ct. 721(2010).

17. The Supreme Court granted Certiorari in Presley in regards to the question of "whether it is so well settled that a defendant's Sixth Amendment right" to a public trial "extends to voir dire that this Court may proceed by summary disposition." The Court affirmed that Waller and Press-Enterprise I "settle the point". Presley, 130 S.Ct. at 723-24.

18. Applicant relied heavily on Owens, supra (Attorney failed to object to violation of public trial during voir dire (2007 opinion)). On remand, granting Owens a new trial, the Court held "...failure to object was not tactical, but based on a lack of knowledge of the applicable law...counsel should have known the applicable law, and should have objected." Owens v. United States(Owens IV), 517 F. Supp. 2d 570, 574-77(2007).

19. This Court concludes that because the Supreme Court held in Presley that the above said question was well settled by Waller and Press-Enterprise I, S.Ct opinions well known since 1984, then at the time of Applicant's trial, based upon Supreme Court precedent, the fact that the public trial right extends to voir dire had been "well settled" for over 25 years.

20. In 2007, several years before Applicant's trial, in Owens IV, the court speaking of Owens trial in 1997, citing Waller and Press-Enterprise I, stated: :"Reasonable counsel with requisite knowledge of the law would have objected....the important Supreme Court precedents had existed for more than a decade." Owens IV, 517 F. Supp. at 576.

21. This Court **concludes** that Applicant's defense attorney, Curtis Fortinberry also should have been aware of the applicable law 13 years after Owens trial, over 25 years after the Supreme Court decided Waller and Press-Enterprise I, and over 5 months after the Supreme Court reiterated that the applicable law was already very well established in Presley .

22. "access to counsels skill and knowledge is necessary to accord 'defendant's the ample opportunity to meet the case of the prosecution' to which they are entitled." Strickland, 466 U.S. at 685 .

23. "Counsel...has a **duty** to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process," Id. at 688 .

---

**A COPY OF ATTORNEY FORTINBERRY'S AFFIDAVIT IS ATTACHED TO THESE PROPOSED FINDINGS AND CONCLUSIONS.**

---

24. Attorney Fortinberry stated in his Affidavit that: "**Because the gallery was full, Petitioner's parents assumed they were not allowed in.**" (His Affidavit response to Ground #2). And : "**I do not believe that his parents mot being in the courtroom during voir dire constitutes a violation of his sixth and fourteenth amendment rights to a public trial.**" (His Affidavit response to Ground #4).

25. In his Affidavit he also stated: "**I cannot speak for the trial judge as to why he did not perform a 'sua sponte 'Waller' test, NOR DID I SEE THE NEED FOR ONE.**" His Affidavit response to Ground #3)

26. Based upon Attorney Fortinberry's own perspective reasoning at the time he failed to object this Court **concludes** that:

    a) Attorney Fortinberry believed that the trial court's public trial right offending action of: **(1)** filling the entire gallery(**public seating area**) with prospective jurors, **(2)** resulting in no accommodations being left in the courtroom to accommodate the public, or Applicant's parents who he(**defense counsel**) had already spoken with out in the hall, that he,had personally informed that they would have a problem being seated once voir dire began(based upon either his version—or Applicant's parent's version, of what he said to them out in the hall), **(3)** before and **without ever performing the Supreme Court mandated "Waller Test"(** considering reasonable alternatives to closure, etc.), and **(4)** without ever even **attempting to fulfill the court's obligation to "take every reasonable measure to accommodate public attendance at criminal trials",** did not, as he put it, : constitute "a violation of" Applicant's "sixth and fourteenth amendment rights to a public trial."(His Af-

fidavit response to Grounds #1-#4).

b) Attorney Fortinberry was unable to recognize the fact that he was a personal witness to all of the required elements that constitute an actual violation of the sixth and fourteenth amendment right to a public trial during voir dire.

c) Attorney Fortinberry's inability, inferred from his own words in the Affidavit, to recognize that his clients right to a public trial was being violated before his very own eyes, indicates that he too had a lack of understanding of the well settled applicable law.

d) Attorney Fortinberry was deficient for being ignorant of the applicable law in affect at the time of trial.

e) Considering the totality of the circumstances, Attorney Fortinberry's Affidavit statement **that he did not see a need for the trial Court to perform the Waller test**("he did not perform a'sua sponte 'Waller' test, NOR DID I SEE THE NEED FOR ONE") **further indicates that he did not understand the applicable law.** This Court **concludes** his failure to object was unreasonable in light of the facts.

1) besides contending that Attorney Fortinberry "should have objected under the Sixth and Fourteenth Amend.... right to a public trial, the Applicant also contended **"He should have objected to the Waller Test Requirements not being met."** See these findings p.21-23.

27. Finally, after having all the facts before him(Attorney Fortinberry) **that constitute closure(knowledge that Applicant's parents were in the hall and had come to see the trial)** and (2) **personal visual first hand knowledge** that the trial court brought in a large panel of jurors **who took up all of the available seats in the gallery**(public seating area), (3) leaving **no accommodations for the public**(Applicant's parents, etc.,), Attorney Fortinberry **still said in his Affidavit: " I was never asked to see if there was somewhere else they could sit during voir dire."** (His Affidavit response to Ground #2) and **"to my knowledge the courtroom was not closed to the public."**(His Affidavit response to Ground #4).

28. This Court **concludes** that the above responses further indicate that defense counsel erroneously believed, contrary to the applicable law, that Applicant's parents, or the Applicant( neither of which he had ever informed of the public trial right), had a responsibility to **request of him that he find them**(Applicant's parents)**somewhere else to sit in the courtroom since the public seating area was full with prospective jurors, in order to alert him that Applicant's public trial right was being violated so he could secure it.**

(a) Attorney Fortinberry has failed to point this Court to any case law or provision in the United States Constitution that holds that before he renders reasonably effective counsel, **by securing, or atleast attempting to secure, Applicant's fundamental right to a public trial, a right for Applicant's own benifit and a safeguard for a fair trial,** that the Applicant, or a member of the public was required to request him(Attorney Fortinberry) to do so.( See Kimmelman, 477 U.S. at 377("**it is through counsel that the accused secures his other rights.**")

(b) This Court **concludes** that "Where the assistance of counsel is a constitutional requisite, the right to be furnished counsel **does not depend upon a request.**"(Carnley v. Cochran, 369 U.S. 506, 513(1962). And likewise once the Sixth Amendment right to counsel has attached,and during a critical stage of trial such as voir dire, the right to the **effective assistance of counsel,** including counsel's **duty to secure the accused "other rights" does not "depend upon a request."**

(c) "The initiation of judicial criminal proceedings...marks the commencement of the 'criminal prosecutions' to which **alone the explicit guarantees of the Sixth Amendment are applicable.**" Kirby v. Ill., 406 U.S. 682, 689-90(1962). The commencement of the criminal prosecution alone against the Applicant marked the point at which time the guarantee of the **effective assistance of counsel became applicable to the Applicant.** McMann v. Richardson, 397 U.S. 759, 771 n.14(1970). That guarantee entails defense counsel **playing "the role necessary to ensure that the trial is fair."** Strickland, 466 U.S. at 685. **In order to play that role it was necessary that Attorney Fortinberry secured, or atleast attempted to secure, Applicant's "other rights" that are safeguards to the fundamental right to a fair trial.** Kimmelman, 477 U.S. at 377. **The right to public trial is that type of "other right"** Cameron v. State, 2014 Tex.Crim.App. LEXIS 1536, *14-*15.

(d) Again, based upon Attorney Fortinberry's admitted subjective reasoning from his personal perspective at the time of trial, his performance was deficient and based on a **multidimensional** misunderstanding or lack of knowledge of the applicable law, and inattention and neglect.

29. This Court further **concludes** that Attorney Fortinberry's statement "to my **knowledge** the courtroom was not closed to the the public."(His Affidavit response to Ground #4) **indicates that his knowledge of the applicable law was so deficient that he was entirely unable to recognize that a closure had taken place before his very eyes** in the same, or a similar way,the trial judge in Cameron v. State, Id. thought that he had not closed the voir proceedings,even though he had.

p.33 of 42

30. This Court has already **concluded** that the voir dire proceeding was closed. See these findings p.6-10.

31. In Cameron, 2014 Tex.Crim.App. LEXIS 1536, *3-*8, the Court of Criminal Appeals noted that a trial judge who filled up the entire gallery with prospective jurors(as in Applicant's trial) did not believe that he had **actually closed the voir dire proceedimg to the public.** That judge even said repeatedly,after Cameron's attorney objected under the 6th Amend. right to a public trial,to her familly and friends being put in the hall,so he could use the entire gallery to seat propective jurors:

> "We recognize the right to be present during voir dire...
> I don't see any room where anybody else would be able to
> sit and observe...There is no way this courtroom can acco-
> mmodate them...It's an open trial. Certainly people have
> the opportunity to observe. **We just don't know WHERE to
> put them....**I'm not ruling. I'm just telling you,**WHERE
> can we put them?**...I'm not over ruling you. **WHERE are we
> going to put them?**...I've never ruled that the public has
> been excluded. All I'm saying is **WHERE do you suggest we
> put them?**...You want to open up those doors and have them
> all stand in that little hallway there so they can observe
> the whole thing? Maybe we could do that. Would that satis-
> fy you?...I'm giving you alternatives...If you want to o-
> pen those doors and put chairs and have people——have the
> public sit there, that's fine with me...The courtroom's
> going to be absolutely stuffed with venire panel members.
> ...I am telling you that you can have people in this court-
> room...**I just don't know WHERE to put them.** So I'm not ..
> .ruling that anybody's excluded...I haven't told you that
> you cannot have people in the courtroom. **Tell me WHERE to
> put them** and we'll put members of her familly...The Court
> did not close the proceeding by any means..."

32. Attorney Fortinberry's Affidavit echoes the same subjective reasoning, or similar reasoning, relied on by the trial judge in Cameron for erroneously believing that the closed voir dire proceeding, was not a closed voir dire proceeding.

   a) Specifically Attorney Fortinberry alleges in his Affidavit that in the hallway: "**I did tell them I did not know WHERE**" Applicant's parents "**would sit during voir dire.**" (His Affidavit response for Ground #1).
      After that, similar to the trial judge in Cameron, he then states: "**...the gallery was full...Petitioner's parents were present for his trial and were not excluded... I do not believe that his parents mot being in the court- room during voir dire constitutes a violation of his sixth and fourteenth amendment rights to a public trial...to my knowledge the courtroom was not closed to the public.**"

b) In both cases, both <u>Cameron's</u> judge and Attorney Fortinber-
ry(Applicant's trial lawyer), acknowledge that: (1) the
gallery is full or about to be full with prospective jur-
rors, (2) while having knowledge of the presence of fam-
illy members, who represent the public, being present, yet
having no seats available for them in the gallery. And (3)
**based on Attorney Fortinberry's <u>version</u> of what he said to
Applicant's parents in the hall**(regardless of the fact it
conflicts slightly with what Applicant's parents contend
he said), **he too, claims that just like <u>Cameron's</u> judge,**
that he made it known that **he did not know <u>WHERE</u> the re-
presentitives of the public would sit during voir dire.**
<u>Cameron's</u> judge communicated that: "I just don't know **WHE-
RE** to put them" to <u>Cameron's</u> defense attorney who was ob-
jecting to closure. Attorney Fortinberry alleges that he
personally communicated to Applicant's parents that he did
not know **WHERE** they would sit **during voir dire.**

c) In both cases, neither(Attorney Fortinberry or <u>Cameron's</u>
judge) was able to recognize that the existence of circum-
stances that led each of them to conclude that they **did
not know WHERE the public would sit**, indicated that an in-
fringement on the Sixth Amendment right to a public trial
had occurred, or was about to occur.

d) Neither of them acknowledged that before such an infringe-
ment on the right to a public trial could be constitution-
ally justified, that the trial court **was obligated to:**
"take every reasonable measure to accommodate public at-
tendance at criminal trials." <u>Lilly</u>, 365 S.W. 3d at 331(
quoting <u>Presley,</u> 130 S.Ct. at 725).(& Perform Waller Test)

e) Attorney Fortinberry's Affidavit alleges that after he ma-
de Applicant's parents aware that he did not know **WHERE**
that they would sit during voir dire, that instead of ob-
jecting based on Applicant's right to a public trial, as
he put it in his own words, he became: "**busy getting ready
for jury selection so I did not make an attempt to see
to it they**(Applicant's parents)**had accommodations in the
courtroom during voir dire.**"(His Affidavit Ground #1).

f) Attorney Fortinberry, failed to object to closure, based
on inattention, neglect, and a lack of knowledge of the
applicable law, that disabled his ability, just like <u>Camer-
on's</u> trial judge, to know when, based on the totality of
the circumstances, the voir dire was closed to the public.

g) Even **after** voir dire began, and there was no room in the
gallery for the public, Attorney Fortinberry did not under-
**stand** that a closure had taken place, based on his own
words.("to my knowledge the courtroom was not closed").

V. This Court recognizes that the Applicant has made several objections to Attorney Fortinberry's Affidavit regarding his response to Grounds #1-#4.

1. There exist different versions between Fortinberry and the Applicant and his parent's version, of what Fortinberry said to each of them, verbally at the time he failed to object to closure.

2. Nevertheless what is desirable for this Court, in order to make a decision judging whether or not Fortinberry was deficient for not objecting to the unconstitutional closure, is evidence based upon his subjective reasoning at the time, and whether or not his failure to object was based on strategy, or lack of knowledge of the applicable law, and inattention and neglect.

3. Fortinberry has provided enough of the desired evidence needed to conclude that his performance was deficient, and his failure to object to closure, both before and after voir dire began, was in fact, based upon inattention and neglect, as well as a lack of understanding of the Applicable law.

4. This Court **concludes** that, as to counsel's performance, **"the Federal Constitution imposes one general requirement: that counsel make objectively reasonably choices"** Bobby v. Hook, 130 S.Ct. 13, 17(2009), that being the law, based upon the record facts, and counsel's own Affidavit, failure to object, under the circumstances of this case, was and is objectively **unreasonable.**

5. This Court has judged **"the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."** Roe v. Flores-Ortega, 528 U.S. 470 , 477(2000).

6. This Court **concludes** that the Applicant had Constitutionally ineffective assistance of counsel.

7. Both prongs of Strickland are satisfied.

8. "From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials..." Gideon v. Wainwright, 372 U.S. 335, 344(1963). That great emphasis includes both the right to a public trial and the right to the effective assistance of counsel.

10. The combined violations of the right to a public trial and the effective assistance of counsel, in this particular case, amount to structural error: a **"defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."** Arizona v. Fulminante,

499 U.S. 279, 310(1991)

------------------------

**U. Conclusions of Law and Recommendation Concerning Ground #2:**

1. This Court, after weighing the evidence of Attorney Fortinberry's own subjective reasoning at the time of trial presented in his own words in his Affidavit, the evidence in the Reporter's Record, the Application filed, the supporting documenta- in the Application, etc., as well as the foregoing factual and legal conclusions for this ground, as well as ground one, three, and four, etc. **concludes by the preponderance of the evidence and the Applicable law that:**

   a) Attorney Fortinberry was Constitutionally ineffective in regards to Applicant's Ground #2.

   b) Applicant has satisfied the prejudice prong of <u>Strickland</u> under **structural error/attributable to the trial court,** and not simply defense counsel, explained by the Texas Court of Criminal Appeals in <u>Johnson v. State</u>, 169 S.W. 3d 223, 228-30(Tex.Crim.App.2005).

   b) The only remedy is to vacate Applicant's conviction and **GRANT HIM A NEW TRIAL.**

2. **This Court recommends GRANTING the relief sought by the Applicant, Desmond Ledet.**


Signed on this the_____Day of_____20_____

(PLEASE SIGN)


_____

**The Honorable Judge Presiding**

Respectfully Submitted,

*Desmond Ledet*

DESMOND LEDET #01651095
3899 State Hwy.98
New Boston, TX. 75570

## CERTIFICATE OF SERVICE

I, Desmond Ledet, certify that the original and two copies of these proposed findings of fact and conclusions of law have been hand delivered to the Tarrant County, TX. Criminal District Clerks Office with instructions for the Clerk to file the original with the 396th Judicial District Court of Tarrant County, TX; and to file one copy with the appellate section of the District Attorney's Office in Tarrant County, TX.

*Desmond Ledet*

DESMOND LEDET

## ATTORNEY FORTINBERRY'S AFFIDAVIT

The following four pages attached to these conclusion after this page is a true copy of Attorney Curtis L. Fortinberry's Affidavit filed in response to Applicant's Grounds.

**p.38 of 42**

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

NOV 20 2014

TIME_____
BY_____
_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 396TH JUDICIAL DISTRICT |
| | § | |
| DESMOND LEDET | § | TARRANT COUNTY, TEXAS |

## AFFIDAVIT OF ATTORNEY CURTIS L. FORTINBERRY

BEFORE ME, the undersigned authority, personally appeared Curtis L. Fortinberry, who being duly sworn, deposes as follows:

"My name is Curtis L. Fortinberry. I am at least 18 years of age and of sound mind. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I was appointed this case on September 14, 2009 and will address all 34 of Petitioner's points.

Ground 1:

Although the courtroom was full, there was space for Petitioner's parents. Petitioner's claims that I refused to allow his parents in are false. I did tell them I did not know where the would sit during voir dire. I never said they were not allowed in the courtroom. I was busy getting ready for jury selection so I did not make an attempt to see to it that they had accommodations in the courtroom during voir dire.

Ground 2:

I fail to see how Petitioner "suffered a structural defect" due to defense counsel not objecting to Petitioner's parents not being in the courtroom during voir dire. Because the gallery was full, Petitioner's parents assumed they were not allowed in. I was never asked to see if there was somewhere else they could sit during voir dire.

Ground 3:

I cannot speak for the trial judge as to why he did not perform a "sua sponte "Waller" test, nor did I see the need for one. Petitioners parents were present for his trial and were not excluded from the voir dire portion.

Ground 4:

I do not believe that his parents not being in the courtroom during voir dire constitutes a violation of his sixth and fourteenth amendment rights to a public trial. As stated in ground 1, to my knowledge the courtroom was not closed to the public.


Grounds 5-19:

(I did not answer each separately as each ground states essentially the same thing, that I was ineffective for not objecting to the police interview)

It was my trial strategy to not object to the interview as, in my opinion, reinforced our contention that Petitioner was innocent. Although pressured by the police detectives, Petitioner continued to maintain in innocence. I wanted the jury to see that he never wavered in spite of the persistence of the detectives. Petitioner knew this prior to trial and never questioned me regarding this.

Ground 20:

Our defense was not that Petitioner never had sex with the victim, but that it was consensual. Defendant admitted this. So I do not see how it was ineffective for me to object to this line of questioning.

Ground 21:

In addition to my answer to ground 20, Petitioner admitted to having sex with the victim in a letter he wrote to the district attorney.

Ground 22:

I don't understand this ground. What he did not say, nor did he ever say, was that he raped the victim. That was the entire defense in this case, that it was consensual.

Ground 23:

This goes back to my answer in grounds 5-19.

Ground 24:

The State explained in voir dire, that if a defendant chose to testify, they had no special protection, that the jury did not have to believe them and presume what that person testified to was true. At no time did the State allude that if a person testified that they lost the presumption of innocence.

Ground 25:

This is simply not true. I did not ever tell Petitioner that he lost the presumption of innocence just because he testified.

Ground 26:

The State asserts in closing argument that he knew what he was doing, that he knew the neighborhood. He knew where to go to have undetected sex. The fact that he went to a location and did in fact have undetected sex indicates he knew where he was going. This is not outside the scope of the evidence presented.

Grounds 27, 28 & 29:

Petitioner asserts that the victim had "multiple convictions" I saw no evidence of this. There are two offense reports in which the victim is the complainant but none where she is the suspect. The State produced no criminal histories of the victim even after a motion to do so was filed. The officer also denied the existence of a criminal history for the victim under oath.

Grounds 30, 31 & 32:

This ground alleges impeachment evidence regarding two offense reports in which the victim was the injured party. In one case, after making the deadly conduct - family member report, she refused to cooperate in the investigation and the detective wasn't convinced complainant did not embellish the story. The other offense report was another assault family violence. The police interviewed both her and the suspect and the detective determined that the complainant really didn't care about the case so he cleared it and said that all the elements of assault were not met.

I do not believe this is impeachment evidence as she was not questioned about it so she did not deny anything regarding these reports. Furthermore the mere fact that the police did not file a case against the two suspects does not mean the assaults did not happen.

Ground 33:

Petitioner is simply not telling the truth. As stated earlier in this response, the interview was not objected to because Petitioner steadfastly protested his innocence despite vigorous interrogation. The intent was to show the jury that if he was guilty he would not have maintained his innocence even when the detectives came at him from many different angles.

Ground 34:

This ground states no "ground" except for grounds 1-33

Ms. Gilliland and I worked many hours on Petitioner's case. We read all of Petitioner's letters (approximately 20) which included areas of questioning for trial. Petitioner was very engaged in the defense of his case. We discussed the strategy and theme of his case. He knew what we were attempting and was in full agreement. Many of the grounds alleged are either false statements, or taken out of context. Although the jury ultimately did not believe it was consensual sex, they did believe him when he said he did not use a weapon, convicting him of a second degree felony rather than a first degree felony.

We were not ineffective in the defense of Petitioner and request that the Court deny his habeas corpus relief.

Curtis L. Fortinberry

SUBSCRIBED AND SWORN TO BEFORE ME on October 15, 2014 by Curtis L. Fortinberry.

Lanette Martinez
Notary Public, State of Texas

LANETTE A. MARTINEZ
Notary Public, State of Texas
My Commission Expires
June 08, 2015